**SIGNED THIS: January 9, 2019**

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SHELLEY HAWK, ) | Case No.  17-81809 |
| ) | |
| Debtor. ) | |

**OPINION**

This matter is before the Court on the objection filed by the chapter 13 debtor, Shelley Hawk (Debtor), to Claim 4-1 filed by the Illinois Department of Human Services (IDHS). The IDHS filed its claim in the amount of $16,784.76, asserting priority status as a Domestic Support Obligation (DSO), for reimbursement of an overpayment of child care assistance benefits. The Debtor denies the debt is a DSO entitled to priority. The Court determines that the nature of the Debtor's reimbursement liability is defined by the original supportive purpose of the funds advanced by the IDHS, that the claim satisfies each of the definitional elements of a DSO, and is entitled to priority status.

**Findings of Fact**

An evidentiary hearing was held on October 22, 2018, at which the Debtor and a representative from the IHDS testified. The State of Illinois operates a child care assistance program under which a low-income parent may receive day care benefits to enable the parent to work. See 305 ILCS 5/9A-11. Eligibility for the benefits is conditioned upon the parent's employment in an approved work activity. Once eligibility is established, the state pays the cost of child care direct to the child care provider. If benefits are paid during a time when the parent is not eligible to receive the benefits under the applicable regulations, the parent may be held liable for reimbursement of such benefits.

The Debtor, a parent with two minor children at that time, applied for and received day care benefits from May 2007 through April 2009, during which time benefits totaling $20,275.14 were paid by the state to her day care provider. After receiving information that called into question her employment status, the IDHS attempted to contact the Debtor to obtain clarification and updated information about her employment. When those attempts proved unsuccessful, the IDHS initiated the reimbursement procedure by sending her a letter indicating that an overpayment determination had been made and attaching a worksheet stating the specific reasons for that determination. The letter advised the Debtor of her right to request a hearing if she wished to challenge the overpayment determination, but she failed to request such a hearing or otherwise respond to the letter.

After a lawsuit was filed in the Circuit Court of Cook County, Illinois, by the IDHS to collect the overpayment, the Debtor, acting without the assistance of an attorney, chose not to dispute the complaint and signed an agreed judgment order entering judgment against her on November 12, 2009, in the amount of $20,275.14. Thereafter, the Debtor made significant

payments on the judgment debt, some via wage deduction. After she filed her Chapter 13 petition on December 19, 2017, the IDHS filed its proof of claim in the amount of $16,784.76, asserting that the claim is a DSO entitled to priority status under 11 U.S.C §507(a)(1). The issue is whether a debt to reimburse a state agency for an overpayment of benefits fits within the definition of a DSO implemented by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).

**Analysis**

Before addressing the main issue of whether the overpayment debt is a DSO, the Court will first address a preliminary argument made by the Debtor at the evidentiary hearing, that the IDHS failed to establish the Debtor's overpayment liability by offering no evidence to rebut the Debtor's testimony that she was, in fact, employed in an authorized work activity from 2007 through 2009. The IDHS argues that the Debtor had the opportunity to dispute the merits of the debt in 2009, both administratively and in the Cook County court proceeding, that she failed to do so and the judgment is preclusive.

The IDHS is correct. Under 28 U.S.C. §1738, federal courts are required to give final judgments rendered by a state court the same preclusive effect those judgments would have in that state's courts. *Long v. Shorebank Development Corp.*, 182 F.3d 548, 560 (7th Cir. 1999). Under the doctrine of *res judicata,* as applied by Illinois courts, a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action. *River Park, Inc. v. City of Highland Park,* 184 Ill.2d 290 (1998). Where a state court has issued a final judgment determining the validity and amount of a debt, the judgment must be given preclusive effect in a subsequent bankruptcy proceeding for the purpose of allowance of the judgment creditor's claim. *In re Mitchell,* 281 B.R. 90, 93

3

(Bankr. S.D. Ala. 2001); *In re Wizard Software, Inc.,* 185 B.R. 512 (Bankr. E.D. Va. 1995). The fact that a judgment is entered by consent of the debtor does not diminish the preclusive effect of the judgment. *In re Diaz,* 580 B.R. 244 (N.D. Ill. 2017). This Court concludes that the doctrine of *res judicata* bars the Debtor from relitigating in bankruptcy her liability for and the amount of the overpayment debt as determined in the Cook County judgment. The IDHS is determined to have an allowed unsecured claim in the amount of $16,784.76.

The remaining issue is whether the IDHS's claim is for a debt that is a DSO and, as such, entitled to priority status under section 507(a)(1) of the Bankruptcy Code. In essence, the Debtor contends that the IDHS debt is not in the nature of support, and thus not a DSO, as it is not a traditional support obligation arising out of a divorce proceeding and is instead a debt for reimbursement of funds wrongfully received from the State of Illinois. For the following reasons, the Debtor's argument, relying upon the historical purpose of pre-BAPCPA law, is contradicted by and must yield to the plain language of the amendments implemented by the BAPCPA.

A provision for the nondischargeability of domestic support debts has been part of the Bankruptcy Code since its inception, although such debts were not accorded priority status until the Bankruptcy Reform Act of 1994 was enacted. In 1984, Congress amended section 523(a)(5) to resolve a split of authority regarding the dischargeability of support debts assigned by a debtor's family member to a government entity by providing that such debts were nondischargeable, notwithstanding that the debt was payable as reimbursement to the government. See *In re Platter,* 140 F.3d 676, 681 (7th Cir. 1998). The 1984 amendment, however, did not expand the dischargeability provision to encompass every debt owed to a governmental entity for support of a spouse, former spouse or child of the debtor. *Id.* So in *Platter*, the Seventh Circuit held that a direct debt (i.e., not one assigned by any dependent of the

4

debtor) owed by the debtor to a governmental agency for reimbursement of the expenses of her child's placement in a residential treatment center was dischargeable under the plain meaning of section 523(a)(5). *Id.* When section 507(a)(7) was added to the Bankruptcy Code in 1994, giving domestic support debts priority status for the first time, the priority provision differed from the dischargeability provision of section 523(a)(5) in that it did not grant priority to any assigned debts, including those assigned to a governmental agency.

The relevant statutory language was substantially changed when the BAPCPA added the term "domestic support obligation" as a defined term that applies to both priority under section 507 and dischargeability under section 523. Section 101(14A) provides that a DSO is:

> a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
> (A) owed to or recoverable by--
>   (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>   (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
>   (i) a separation agreement, divorce decree, or property settlement agreement;
>   (ii) an order of a court of record; or
>   (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. §101(14A).

The BAPCPA definition's stand-alone reference to a governmental unit in section 101(14A)(A)(ii), establishes that a governmental unit may hold a DSO claim, not only for a debt assigned to it, but also for a debt that is owed to it as the original obligee, so that a debtor's direct liability to a governmental unit for reimbursement of funds advanced is now expressly included within the class of debts that may be DSOs. Hon. William Houston Brown, **Bankruptcy and Domestic Relations Manual §6:4** (Oct. 2018). That same provision, in conjunction with section 507(a)(1), also establishes, for the first time, that a claim for a DSO held by a governmental unit is entitled to priority status. As amended by the BAPCPA, section 507(a)(1) provides for two separate tiers of first-level priority. Under section 507(a)(1)(A), a DSO that is owed to or recoverable by a spouse, child or a person responsible for the child, that has not been assigned to a governmental unit or has been assigned only for collection purposes, has first-level, first-tier priority. Under section 507(a)(1)(B), a DSO that has been assigned to a governmental unit other than for collection purposes or that is "owed directly to or recoverable by a governmental unit under applicable nonbankruptcy law," has first-level, second-tier priority. Thus, a direct debt to a governmental unit that meets the definition of a DSO, has first-level, second-tier priority notwithstanding that the debt did not originate as one owed to a spouse or child and did not arise out of a marital dissolution or other domestic relations proceeding.

As it pertains to a debt owing to a state agency resulting from funds provided to or for the benefit of a child or children of a debtor, the debt is a DSO if it is:

1. owed to a governmental unit,
2. in the nature of assistance provided by a governmental unit to a child of the debtor,
3. established by court order or by a determination made in accordance with applicable non-bankruptcy law by a governmental unit, and
4. not assigned to a nongovernmental entity.

Hon. William Houston Brown, **Bankruptcy and Domestic Relations Manual §6:4 (October 2018)**; *In re Schauer,* 391 B.R. 430, 434 (Bankr. E.D. Wisc. 2008).

There is no dispute that the IDHS claim meets the first, third and fourth conditions. Only the second condition, whether the overpayment debt is in the nature of support, is controverted. The IDHS advocates that section 101(14A) should be interpreted and applied literally, as the court did in *In re Etnire,* 568 B.R. 80 (Bankr. C.D. Ill. 2017)(Altenberger, J.), holding that a debtor's obligation to the IDHS for overpayment of child care benefits for her dependent children was entitled to priority as a DSO.

A split of authority has developed. In addition to *Etnire,* several other courts have held that a debtor's liability to a state agency for overpayment of government assistance benefits is in the nature of support for DSO purposes. *In re Anderson,* 439 B.R. 206 (Bankr. M.D. Ala. 2010)(debt for overpayment of food stamp benefits was DSO); *In re Wheeler,* 2010 WL 503112 (Bankr. N.D. Ala.)(debt for overpayment of food stamp benefits was DSO entitled to priority); *In re Schauer,* 391 B.R. 430 (Bankr. E.D. Wisc. 2008)(debt for child care overpayments was nondischargeable DSO); *Wisconsin Dept. of Workforce Dev. v. Ratliff,* 390 B.R. 607 (E.D. Wisc. 2008)(debt for overpayment of food stamp benefits was in nature of support and entitled to priority as a DSO). Other courts disagree. *In re Halbert,* 576 B.R. 586 (Bankr. N.D. Ill. 2017)(debts for reimbursement of government overpayments are not in the nature of support); *In re Hickey,* 473 B.R. 361 (Bankr. D. Ore. 2012)(debt for overpayment of public assistance benefits was not in the nature of support).

With respect to statutory interpretation, courts begin with the understanding that Congress says in a statute what it means and means in a statute what it says there. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000). Where a statute's

7

language is plain, the sole function of the courts is to enforce it according to its terms, unless the disposition required by the text is absurd. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241 (1989). In searching for a plain meaning, a court should give effect, if possible, to every clause and word of a statute. *Duncan v. Walker,* 533 U.S. 167, 174 (2001). Proper statutory construction requires considering not only the bare meaning of a word but also its placement and purpose in the statutory scheme. *Bailey v. United States,* 516 U.S. 137, 145 (1995). When amendatory legislation is enacted that makes substantial changes to an existing statute, it should be presumed that the changes embodied in the new statutory language reflect the deliberate policy choices of Congress. *Union Bank v. Wolas,* 502 U.S. 151, 160 (1991).

Under section 101(14A)(B), as it applies to the facts at issue, the IDHS must establish that the debt is "in the nature of …support … of [a] child of the debtor," which includes "(assistance provided by a governmental unit)." Like all statutory terms, the word "assistance" must be read in the context in which it is used. See *Matter of Handy Andy Home Improvement Centers, Inc.,* 144 F.3d 1125, 1128 (7th Cir. 1998). The parenthetical modifier expressly provides that assistance provided by a governmental unit is a form of "support." Public or government assistance is generally defined to mean government benefits or aid provided to the needy, the disabled and to dependent children. See *In re Hardy,* 787 F.3d 1189, 1193 (8th Cir. 2015); *In re Lee,* 415 B.R. 518, 525 (Bankr. D. Kan. 2009). In the context in which it is used, the term "assistance," is referring to financial aid provided under a government program specifically designed to help those who cannot afford or are otherwise unable to provide for themselves and their dependents. As it applies to governmental units then, section 101(14A)(B) applies only where, first, government funds were paid under a program of public aid and, second, the recipient or beneficiary of the aid was a spouse, former spouse or child of the debtor.

8

The Debtor concedes that IDHS's financial assistance with her childcare expenses was intended to and did, in fact, enable her to work and thus support her children. The Debtor contends, however, that her debt to the IDHS is for reimbursement of wrongfully received funds and not in the "nature of support." The IDHS contends that a debtor's liability for reimbursement of public funds is clearly included within the scope of a DSO under the BAPCPA definition.

*Etnire* is directly on point, holding that a debtor's obligation to the IDHS for overpayment of child care benefits was a DSO payable as a priority claim in her chapter 13 plan. The court reasoned that the "plain meaning" of a DSO as defined in section 101(14A) includes debts owed to or recoverable by a governmental unit, including a debt for overpayment of child care benefits. Focusing on the parenthetical directive that support includes assistance provided by a governmental unit, the court determined that a debt to a governmental unit to repay funds received through a program designed to pay for child care so that the parent could work is plainly in the nature of support and within the scope of a DSO, as defined in section 101(14A).

This Court agrees with the reasoning and result of *Etnire,* which gives full effect to the text of the definition of a DSO. The court incisively focused on subparagraph (A) of section 101(14A) and its inclusion of a direct debt that a debtor owes to a governmental unit, and reasoned that subparagraph (B) clearly includes financial assistance provided by a governmental unit that is intended to and does, in fact, help a parent support her children as being in the "nature of support." In real-world terms, the type of liability that would give effect to these provisions must be one for repayment or reimbursement of funds paid out by a government program designed to provide financial aid to help support a child of the debtor.[1] A debtor's direct liability

---

[1] There are two ways that a person who receives financial assistance under a government program may be liable to reimburse all or a portion of the funds received. First, liability may accrue where the program mandates that funds expended by the program must be paid back by the beneficiary. See, e.g., *In re Platter, supra* (where the Indiana Code required the parent to repay DFCS for the cost of placing a child

9

to reimburse assistance payments made by a governmental unit is plainly encompassed by the definition of a DSO and is eligible for priority status under section 507(a)(1)(B).

Since the DSO definition includes direct debts owed by a debtor for repayment of funds to a governmental unit, and under subparagraph (B) the beneficiary of the support must be a spouse, former spouse or child of the debtor, the statutory language supports the conclusion that the debt, an obligation to reimburse government issued funds, retains its "original supportive nature." *In re Taylor,* 737 F.3d 670, 679 (10th Cir. 2013). The character or "nature" of the liability is derived from the original purpose of the funding. The 2005 amendments support the universal application of that principle. By making a DSO a defined term, the BAPCPA brought under a single umbrella definition, both assigned debts and direct debts to governmental units, including not only support-type debts arising out of domestic relations proceedings but also support-type debts arising out of other judicial proceedings and government administrative actions. These various debts now stand on the same statutory footing,

The IDHS program for child care assistance fits squarely within the expanded definition of a DSO. Where government funds are issued as aid to a debtor with children, and the debtor incurs a liability for repayment of those funds, that debt is in the nature of support of a child of the debtor under section 101(14A)(B).

Some commentators have expressed concern that by determining an overpayment liability to be a DSO, courts are heading down a slippery slope that will end up with virtually any incorrect payment by a governmental agency, such as tax refund overpayments, being classified as a DSO that has priority status and is nondischargeable. See **Collier on Bankruptcy** (16th Ed.)

---

in a residential treatment center). Second, liability may arise when the program provides for reimbursement for overpaid benefits. Section 101(14A) draws no distinction between the two types of liability and both are covered by the plain terms of the definition of a DSO.

¶ 101.14A, p. 101-96.3. This Court does not share those concerns in light of the limiting principles set forth in subparagraph (B) of section 101(14A). In order to be a DSO, the assistance received from the government must have been authorized under a program of financial aid and must have benefitted "a spouse, former spouse, or child of the debtor, or such child's parent." The IDHS program of child care assistance meets these requirements, whereas many other government programs will not.

The new definition for a DSO implemented as part of the BAPCPA clearly results in equal priority status for both direct debts owed to governmental units relating to child support programs and support debts assigned to governmental units. As such, the solvency of such programs is protected and debtors and their bankruptcy estates are required to accord equal treatment to government agencies that provide financial support without regard to whether the liability was direct or assigned, arose out of a divorce proceeding, another judicial proceeding or an administrative proceeding. While the wisdom of the more expansive definition of a DSO may be debated, its plain meaning may not. Neither can the underlying policies be dismissed as absurd. As a new provision that substantially revised the prior statute, the definition of a DSO is presumed to reflect the deliberate choice of Congress made upon careful reexamination of the prior law. See *Union Bank v. Wolas,* 502 U.S. at 160.

This Court agrees with the analysis adopted by the court in *Schauer* and followed by the courts in *Ratliff, Wheeler, Anderson and Etnire.* The definition of a DSO set forth in section 101(14A) encompasses a debtor's direct liability to a governmental unit to reimburse an overpayment of benefits paid under a program designed to provide public assistance to or for the benefit of children. Where a debtor's child or children benefitted from such payments, the original supportive nature of the funds is retained so that the liability to reimburse those funds is

a debt in the nature of support of such child or children under section 101(14A)(B). This result gives full effect to subparagraphs (A)(ii), (B) and (C)(iii) of section 101(14A), the provisions that are most pertinent to the facts of this case.

For the foregoing reasons, the allowed unsecured claim of the IDHS in the amount of $16,784.76 is determined to be a DSO under section 101(14A). As a claim for a debt owed directly to a governmental unit under applicable nonbankruptcy law, the IDHS's claim is properly accorded first-level (second-tier) priority under section 507(a)(1)(B).

This Opinion constitutes this Court's findings of fact and conclusions of law made in accordance with Rule 7052(a)(1) of the Federal Rules of Bankruptcy Procedure. A separate order will be entered.

#   #   #